IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ENVIRONMENTAL PROTECTION )        02:04-CV-1705-GEB-KJM
AND INFORMATION CENTER, a )
California nonprofit corporation, )
                          )
              Plaintiff,  )
                          )
        v.                )        ORDER*
                          )
UNITED STATES FOREST SERVICE, )
                          )
              Defendant.  )
                          )

Plaintiff moves for an injunction under Rule 62(c) of the Federal Rules of Civil Procedure. Defendant opposes the motion.

BACKGROUND

On August 20, 2004, Plaintiff filed an action challenging the decision of the United States Forest Service ("Forest Service") to authorize tree thinning and treatment of fire fuels on 2,077 acres of land in the Shasta-Trinity National Forest, commonly referred to as the East Fork Timber Sale or the East Fork Project ("Project"). (See Order, Aug. 22, 2005, at 1.) Specifically, Plaintiff asserted the Forest Service violated the National Forest Management Act ("NFMA") as

_____

* The parties waived oral argument. (Pl.'s Mot. at 2.)

1

well as National Environmental Policy Act ("NEPA") by approving the
Project.  (See id. at 2.)

On February 4, 2005, Plaintiff filed a motion for summary
judgment; the Forest Service filed a cross motion for summary judgment
on March 31, 2005.  (Id. at 1.)  An Order filed August 22, 2005,
granted summary judgment in favor of the Forest Service ("Summary
Judgment Order"); judgment was subsequently entered against Plaintiff.
(Id. at 26.)  On October 20, 2005, Plaintiff filed a Notice of Appeal
to the Ninth Circuit.  (Pl.'s Not. of Appeal at 1.)

After the Summary Judgment Order issued, the Forest Service
awarded Trinity River Lumber Company ("Trinity Lumber") the contract
to perform the tree thinning and fire fuel treatment process.
(Sanders Decl. ¶ 4.)  Trinity Lumber began work on the Project in
November 2005, but only a "minor amount" of trees were logged over
"about a two-week period because the fall rains prevented further
work."  (Id. ¶ 5.)  Trinity Lumber resumed work in early May 2006, and
to date has logged "between 200-240 acres."[1]  (Id.)

On July 12, 2006, Plaintiff learned the contract had been
awarded to Trinity Lumber and that the logging process had begun.
(Dungan Decl. ¶¶ 2, 5-6.)  Plaintiff apparently "had no idea at all
that logging would begin prior to a decision from the Ninth Circuit,"
because it believed a "voluntary stay was still in effect which
Defendant had agreed to in [a Joint Status Report filed November 1,
2004]."  (Id. ¶ 8.)  On July 13, 2006, Plaintiff filed a motion for

---

[1]   Plaintiff asserts Trinity began logging on July 10, 2006,
but neither Plaintiff nor its counsel appear to have personal
knowledge of when logging operations first commenced.  (See Dugan
Decl. ¶ 2, 4-5.)

"an injunction of logging and other ground disturbing activities [in the Project area] pending an appeal of this case."  (Pl.'s Mot. at 1.)

## DISCUSSION

"Once a notice of appeal is filed, the district court is divested of jurisdiction over the matters being appealed."  Natural Resources Defense Council, Inc. v. Sw. Marine Inc., 242 F.3d 1163, 1166 (9th Cir. 2001).  "The principle of exclusive appellate jurisdiction is not, however, absolute.  The district court retains jurisdiction during the pendency of an appeal to act to preserve the status quo."  Id. (citations omitted).  "This exception to the jurisdictional transfer principle has been codified in Rule 62(c) of the Federal Rules of Civil Procedure, which allows a district court to 'suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.'"  Id.

In Hilton v. Braunskill, the Supreme Court articulated four factors a district court should consider when analyzing a Rule 62(c) motion: "(1) whether the [injunction] applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a[n] injunction; (3) whether issuance of the [injunction] will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  481 U.S. 770, 776 (1987).[2]

---

[2]     Plaintiff argues it "is . . . entitled to an injunction pending appeal if [it] demonstrate[s] either: (1) a likelihood of success on the merits and a possibility of irreparable injury; or (2) the existence of serious questions on the merits and a balance of hardships tipping in [its] favor."  (Pl.'s Mot. at 3.)  However, the case Plaintiff relies upon "is not on point . . . because it deals with a party's request for pre-litigation preliminary injunctive
(continued...)

A.  Likelihood of Success on Appeal

        Plaintiff asserts it "has throughly briefed the merits of the case in its summary judgment brief and reply brief . . . [and] although this Court ruled against Plaintiff on the merits, Plaintiff certainly raised 'serious questions going to the merits' [in those briefs] . . . ."  (Pl.'s Mot. at 8.)  The Forest Service rejoins that "[b]y granting summary judgment on all issues raised by Plaintiff, this Court has already determined that Plaintiff cannot succeed on the merits of its case."  (Def.'s Opp'n at 2.)  The Forest Service further contends "Plaintiff has wholly failed to show any bases for concluding that it is likely to prevail on the appeal . . . ."  (Id.)

        "Several courts have observed that the success on the merits factor cannot be rigidly applied because if it were, an injunction would seldom, if ever be granted because the district court would have to conclude that it was probably incorrect in its determination on the merits."  Protect Our Water v. Flowers, 377 F. Supp. 2d 882, 884 (E.D. Cal. 2004) (citations and quotation marks omitted).  Consequently, district courts "have interpreted [the success on the merits factor] as requiring . . . the movant [to] show that 'the appeal raises serious and difficult questions of law in an area where the law is somewhat unclear.'"  Overstreet v. Thomas Davis Med. Ctrs., P.C., 978 F. Supp. 1313, 1314 (D. Ariz. 1997); Protect Our Water, 377 F. Supp. 2d at 844 (stating that "district courts properly stay their own orders [pending appeal] when they have ruled on an admittedly

_____

[2](...continued)
relief."  McAfee v. United States, 2006 WL 829135, *2 (E.D. Cal. 2006).  The test articulated by the Supreme Court in Hilton applies when a party seeks an injunction pending appeal.  Id.; Digital Comm'n Network, Inc. v. AB Cellular Holding LLC, 1999 WL 1044234, *4 (C.D. Cal. 1999).

difficult legal question"); <u>Stop H-3 Ass'n v. Volpe</u>, 353 F. Supp. 14, 16 (D. Hawaii 1972) (observing that injunctions pending appeal are "issued where the trial court is charting a new and unexplored ground and the court determines that a novel interpretation of the law may succumb to appellate review").

Plaintiff does not explain the specific basis of its appeal; presumably, the appeal concerns whether the Summary Judgment Order correctly concluded that the Forest Service did not violate NEPA and NFMA by authorizing the Project. (<u>See</u> Order, Aug. 22, 2005, at 2.) In general, a ruling as to "whether an agency decision violated environmental statutes does not [raise] novel legal issues." <u>Protect Our Water</u>, 377 F. Supp. 2d at 844 (collecting cases). Plaintiff has not identified any "novel" legal issues in the Summary Judgment Order, or explained how that Order charted new and unexplored grounds. <u>Id.</u> In addition, Plaintiff has not articulated "any factual error []or any rationale for concluding that [the Summary Judgment Order] was incorrect." <u>Id.</u> Consequently, the first <u>Hilton</u> factor does not favor an injunction pending appeal.

B.  Irreparable Injury

Plaintiff argues the "logging of the forest habitat within [the Project area] would constitute irreparable harm" because the area is "of pristine biological value for riparian dependant species" and other "sensitive species," such as the Pacific Fisher and Northern Spotted Owl. (Pl.'s Mot. at 5-6.) Plaintiff also indicates logging in the Project area would cause irreparable harm to "old growth forest," because if cut, the forest would take hundreds of years to reproduce. (<u>Id.</u> at 6.) The Forest Service rejoins that "[b]y granting summary judgment to the Forest Service . . . the Court has

1  . . . determined that the impacts from the East Fork Project will not

2  have a significant effect on the environment."  (Def.'s Opp'n at 3.)

3  In addition, the Forest Service asserts that the Project does not

4  affect "large, old growth timber," but rather involves the removal of

5  "small tress to enhance growing conditions for larger trees."

6  (Sanders Decl. ¶¶ 3, 6, 9, 10.)

7           When evaluating the harm that will occur if an injunction

8  pending appeal is not granted, "a court may consider: '(1) the

9  substantiality of the injury alleged; (2) the likelihood of its

10 occurrence; and (3) the adequacy of the proof provided.'"  EEOC v.

11 Harris Farms, 2006 WL 1881236, *1 (E.D. Cal. 2006) (quoting Michigan

12 Coal. of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d

13 150, 153 (6th Cir. 1991)).  Plaintiff has not demonstrated the Project

14 will likely cause substantial injury because contrary to its

15 assertions, the Project area is not of "pristine biological value,"

16 but rather consists of "young growth" conifer stands "stocked with too

17 many trees . . . [that] are beyond site capacity to maintain a

18 healthy, vigorous forest."  (Order, Aug. 22, 2005, at 6.)  Further, a

19 biological assessment of the Project determined that it will not

20 significantly impact any sensitive species or their habitats. (Id. at

21 9-13, 24.)  Since Plaintiff has submitted no evidence to demonstrate a

22 substantial or likely injury exists to the forest or species in the

23 Project area, Plaintiff has not shown that the second Hilton factor

24 favors an injunction.[3]  See Harris Farms, 2006 WL 1881236 at *1

25

26      [3]    Plaintiff appears to argue that a violation of NEPA or NFMA
"by itself constitutes irreparable harm."  (Pl.'s Mot. at 6-7.)
27 However, the Summary Judgment Order concluded that the Project did not
violate either environmental Act.  (Order, Aug. 22, 2005, at 26.)
28 Furthermore, "[t]he Supreme Court has rejected a presumption of
                                                  (continued...)

(stating that a "speculative injury does not constitute irreparable injury").

C.  Injury to Other Parties

Plaintiff does not address whether its proposed injunction would cause injury to third parties, but the Forest Service argues the injunction would "cause hardship to [Trinity Lumber] . . . and to the local community."[4]  (Def.'s Opp'n at 3.)  A declaration submitted by Dee Sanders, the general manager of Trinity Lumber, explains that the company has already paid the Forest Service a "down payment of $55,000" and "four payment units  . . . [totaling] $95,000," has spent "$50,000 on road reconstruction," and paid an additional $290,000 to Project contractors.  (Sanders Decl. ¶ 4.)  In addition, Sanders declares that Trinity Lumber is "relying on [the Project] in [its] summer and fall operating plans," and that if the company "is unable to continue harvest . . . [it] may not be able to replace the [timber] and will likely have to pay [an estimated $3.5 million dollars] for the timber if it can be replaced."  (Id. ¶ 8.)  Sanders further asserts that "there are about 20 people involved in the harvesting, yarding, loading, and hauling of the timber from the sale area," and

---

[3](...continued)
irreparable injury when an agency fails to evaluate thoroughly the environmental impact of a proposed action."  Idaho Sporting Congress Inc. v. Alexander, 222 F.3d 562, 569 (9th Cir. 2000).

[4]  Although the proposed injunction would prohibit Trinity Lumber from logging the Project area, the parties have not addressed whether Trinity Lumber is a necessary or indispensable party to this litigation.  See Kettle Range Conservation Group v. United States Bureau of Land Mgmt., 150 F.3d 1083 (9th Cir. 1998) (holding the district court correctly determined it was without authority to grant injunctive relief in the absence of third parties whose interests would be affected by the proposed injunction).  Since the necessary or indispensable status of Trinity Lumber need not be reached to resolve this motion, the issue is not decided.

1  that if the Project was "enjoined even for a short time . . . [the]

2  crew would suffer certain financial hardship." (Id. ¶ 9.)

3          In light of the Sanders declaration, it appears the proposed

4  injunction would cause injury to Trinity Lumber and possibly to its

5  employees.  Consequently, Plaintiff has not demonstrated the third

6  Hilton factor favors an injunction.

7  D.  Public Interest

8          Neither party has addressed whether the public interest

9  favors granting the proposed injunction; consequently, it cannot be

10 determined whether the fourth Hilton factor favors an injunction.

11                              CONCLUSION

12         Since Plaintiff has not demonstrated any of the four Hilton

13 factors favor an injunction, its motion for an injunction pending an

14 appeal is denied.

15 Dated:  July 25, 2006

16

17                         /s/ Garland E. Burrell, Jr.
                           GARLAND E. BURRELL, JR.
18                         United States District Judge

19

20

21

22

23

24

25

26

27

28